T.C. Memo. 2009-4

UNITED STATES TAX COURT

EDWARD AND MARY E. SULLIVAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15124-06L.                    Filed January 5, 2009.

    Ps had unpaid liabilities of income tax for six
years (some joint, and some the liability of P-H only),
for which R sent notices of liens and proposed levies
under secs. 6320(a) and 6330(a), I.R.C.  Pursuant to
secs. 6320(b) and 6330(b), Ps requested a collection
review hearing, and in that hearing submitted several
Forms 656, Offers in Compromise (OIC) (with which they
submitted financial information), proposing compromise
of liabilities estimated at $210,405, consisting of the
six years of income tax liabilities, plus other
liabilities whose collection is outside this Court's
jurisdiction to review.  Ps informally proposed their
last offer--$54,000--in writing but not on Form 656,
offered to submit Form 656, and disclosed their equity
of $464,653 in a house they owned as tenants by the
entirety.  R's appeals officer rejected the OICs and
the informal proposal, and issued notices of
determination to proceed with collection.  Ps filed
their petition, and R moved for summary judgment.

    <u>Held</u>:  The Court's jurisdiction to review
collection as to Ps' liability for six years of income

tax enables the Court to review the exercise of discretion by R's appeals officer in rejecting OICs that included both those liabilities and other liabilities whose collection the Court does not have jurisdiction to review.

Held, further, the $54,000 written proposal that was not submitted on Form 656, although not a formal OIC for purposes of sec. 7122, I.R.C., was preceded by formal OICs, was accompanied by the information required with an OIC, and did constitute a "collection alternative" (under sec. 6330(c)(2)(A)(iii), I.R.C.) that was properly raised at the hearing and is subject to our review.

Held, further, it was not an abuse of discretion for R's appeals officer to consider the value of Ps' entirety property as contributing to their reasonable collection potential.

Held, further, it was not an abuse of discretion for R's appeals officer to reject Ps' $54,000 proposal, because she reasonably determined that there was no basis for compromise on (i) doubt as to liability, because Ps do not challenge liability; (ii) doubt as to collectibility, because Ps' reasonable collection potential was substantially greater than their OICs, including their $54,000 proposal, and greater than their liabilities; or (iii) promotion of effective tax administration, because Ps failed to show any special circumstances which would demonstrate that collection of the full liability would undermine public confidence that tax laws are being administered fairly.


Joseph A. Ryan, for petitioners.

Kristina L. Rico, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge:  The petition in this case is an appeal, pursuant to section 6330(d)(1),[1] of three Notices of Determination Concerning Collection Action(s) under Section 6320 and/or 6330, which were issued by the Internal Revenue Service (IRS) to petitioners Edward and Mary E. Sullivan in connection with Mr. Sullivan's unpaid income taxes for tax years 1993 and 1995 and Mr. and Mrs. Sullivan's joint unpaid income taxes for tax years 1996, 1997, 2000, and 2001.  The issue for decision is whether the IRS abused its discretion in rejecting the offers-in-compromise (OICs) that the Sullivans submitted to satisfy those liabilities (and others)[2] or whether instead the IRS may proceed to collect those liabilities.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Sullivans' several OICs which the Court must consider here, and which are discussed in more detail below, proposed to satisfy not only the liabilities whose collection is within our jurisdiction but also additional liabilities--i.e., Mr. and Mrs. Sullivan's joint income tax liabilities for several other tax years (for which it is not alleged that the IRS ever issued any notice under section 6320(a) or 6330(a)) and for Mr. Sullivan's liability for the trust fund penalties.  For reasons explained below, this Court does not have jurisdiction to review the IRS's proposed collection of those other liabilities, but they are relevant to the issues that are within the Court's jurisdiction.

## Background

This case was submitted fully stipulated pursuant to Rule 122, reflecting the parties' agreement that the relevant facts could be presented without a trial.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Mr. and Mrs. Sullivan resided in Pennsylvania at the time they filed their petition.

Tax Years 1993 and 1995

Mr. Sullivan filed income tax returns for 1993 and 1995.  The IRS conducted an examination of those returns and sent him a statutory notice of deficiency for 1993 and 1995.  Because Mr. Sullivan did not petition this Court with respect to the deficiency notice, the IRS assessed the 1993 and 1995 income tax deficiencies, along with additions to tax and interest, in June 1997 and in March 1998.  Subsequently, in May 2005, the IRS sent to Mr. Sullivan a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, pursuant to sections 6330(a)(1) and 6331(d)(1), advising him of the IRS's intent to levy upon his property, and also sent to him a Notice of Federal Tax Lien Filing and Your Right to a Hearing, pursuant to section 6320(a)(1), advising him that the IRS had filed a notice of tax lien against him.  Both notices reflected the income tax liabilities for 1993 and 1995; however, the notice of lien also reflected other liabilities the collection of which is, for

reasons explained below, not within our jurisdiction here--i.e., Mr. Sullivan's liability in calendar quarters in 1998 and 1999 for so-called "trust fund penalties" under section 6672, with respect to the operation of Paoli Local Restaurant.

Tax Years 1996, 1997, 2000, and 2001

Mr. and Mrs. Sullivan filed joint income tax returns for the four years 1996, 1997, 2000, and 2001. For the first two of those years--1996 and 1997--the IRS conducted an examination of the returns and sent the Sullivans a statutory notice of deficiency. Because the Sullivans did not petition this Court with respect to the deficiency notice, the IRS assessed in April 1999 the income tax deficiencies it had determined for 1996 and 1997, along with additions to tax and interest.

For the later years 2000 and 2001, the IRS assessed in October 2001 and April 2002 the income tax liabilities that the Sullivans had self-reported on their tax returns, but which they had not fully paid when they filed those returns.

Subsequently, in May 2005, the IRS sent to each of Mr. and Mrs. Sullivan separately a Notice of Federal Tax Lien Filing and Your Right to a Hearing, pursuant to section 6320(a)(1), advising each of them that the IRS had filed a notice of tax lien against them for all four years (1996, 1997, 2000, and 2001), and sent to each of them separately a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, pursuant to sections

6330(a)(1) and 6331(d)(1), advising each of them of the IRS's intent to levy upon their property for 2000 and 2001 only. (The record does not show why no notice of levy was sent for 1996 or 1997.)

The six collection notices that the Sullivans received from the IRS can be summarized thus:

| Type of Notice | Recipient | Liability |
|---|---|---|
| Levy | Mr. Sullivan | Income tax: 1993, 1995 |
| Lien | Mr. Sullivan | Income tax: 1993, 1995; Sec. 6672 penalty: 1998, 1999 |
| Levy | Mr. Sullivan | Income tax: 2000, 2001 |
| Lien | Mr. Sullivan | Income tax: 1996, 1997, 2000, 2001 |
| Levy | Mrs. Sullivan | Income tax: 2000, 2001 |
| Lien | Mrs. Sullivan | Income tax: 1996, 1997, 2000, 2001 |

Agency Hearing

In response to these six notices, the Sullivans' representative submitted to the IRS on May 27, 2005, four Forms 12153, Request for a Collection Due Process Hearing--two for Mr. Sullivan, one for Mrs. Sullivan, and one for the Sullivans jointly.[3]  In the aggregate, the requests pertained to

_____

[3]The Sullivans' Forms 12153 included references to supposed notices of levy for 1996 and 1997 income tax and for the trust fund penalties, even though the record here does not include evidence of any such notices.  The district court's decision in
(continued...)

all of the liabilities that had been reflected on the IRS's six collection notices--i.e., the liability of Mr. Sullivan for 1993 and 1995 income tax and for the trust fund penalty from quarters in 1998 and 1999, and the liability of both Mr. and Mrs. Sullivan for income tax for 1996, 1997, 2000, and 2001.

With their requests for a hearing, the Sullivans submitted financial information about themselves (on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals) and on Mr. Sullivan's bankrupt business (on Form 433-B, Collection Information Statement for Businesses). The forms disclosed bank accounts with modest balances; a retirement account worth $11,530; a house worth $350,000 subject to a mortgage of $78,520; credit card debt of $9,938; car loans totaling $16,118; and no other debt.

On the Forms 12153 requesting a hearing, the Sullivans did not challenge the underlying tax liabilities; rather, the forms stated only their desire for an OIC. Even before requesting the hearing, the Sullivans had proposed such a compromise:

More than a month earlier, on April 14, 2005, the Sullivans had jointly submitted a Form 656, Offer in Compromise, pursuant

---

[3](...continued)
Mr. Sullivan's case involving the trust fund penalties does refer to collection by levy, so it appears that a notice of levy must have been issued as to the trust fund penalties. Sullivan v. United States, 100 AFTR 2d 2007-6204, at 2007-6207 (E.D. Pa. 2007). This discrepancy does not affect the outcome here.

to section 7122, proposing compromise on the basis of effective tax administration (ETA). The OIC proposed that the IRS accept payment of $34,017 from the Sullivans to satisfy Mr. Sullivan's liability for trust fund penalties and Mr. and Mrs. Sullivan's income tax liabilities for 1993, 1995, 1996, 1997, and 2000.[4] To justify the compromise on ETA grounds, a letter accompanying the Form 656 argued that the offer should be accepted because the Sullivans had tried to resolve their dispute with the IRS in a "timely and equitable manner" and because their tax troubles were largely a result of unfortunate circumstances outside of their control, such as Mr. Sullivan's inconsistent employment and the bankruptcy of their family business.

On May 7, 2005 (again, before the Sullivans' Forms 12153 requesting a hearing were submitted to the IRS), the IRS's Centralized OIC Unit in Holtsville, New York, sent the Sullivans a letter indicating, among other things, that each of them would need to submit a separate OIC on Form 656.

In response, on May 27, 2005--the same day the Sullivans submitted their Forms 12153 requesting a collection review

---

[4]It is unclear whether the April 2005 OIC excludes the year 2001 deliberately or in error. However, the later OICs do explicitly include 2001. Similarly, although the parties have stipulated that the April 2005 OIC included "employment * * * tax liabilities" (by which they presumably mean the trust fund penalty), the Form 656 does not say so in the appropriate line under "Item 5". However, the trust fund penalty liabilities are explicitly included in Mr. Sullivan's May 2005 OIC.

hearing--Mr. Sullivan submitted an OIC on the basis of doubt as to liability (DATL) and doubt as to collectibility (DATC), proposing that the IRS accept payment of $31,629 to satisfy his individual trust fund penalties and his income tax liabilities for eight years. Those eight years consisted of his two non-joint tax years that had been the subject of the IRS's prior notices (1993 and 1995), the four joint years that had been the subject of the IRS's prior notices (1996, 1997, 2000, and 2001), and two additional years, newly brought into consideration--2003 and 2004. On the same day, Mrs. Sullivan submitted an OIC on the basis of DATL and DATC, proposing that the IRS accept payment of $10,000 to satisfy her income tax liabilities for six years: the four joint years that had been the subject of the IRS's prior notices (1996, 1997, 2000, and 2001), and the two additional years--2003 and 2004.

To justify their individual OICs on grounds of DATL and DATC, Mr. and Mrs. Sullivan each cited the same reasons that had previously been argued in favor of their prior, joint OIC, and additional reasons stated in a letter dated May 23, 2005. In that letter, the Sullivans argued that there was doubt as to liability because (i) Mr. Sullivan's trust fund penalties were allegedly discharged in the bankruptcy of Paoli Local Restaurant (a contention later rejected in separate litigation, as explained below) and (ii) the IRS had allegedly failed to apply several

credits to their unpaid income taxes.  They argued that there was doubt as to collectibility because "the only substantive asset [they] possess is [their] personal residence".

In that letter of May 23, 2005, the Sullivans valued their house at $375,000[5] and stated their mortgage balance (along with necessary "[c]ommissions", "repairs", and "taxes" incidental to a sale) amounted to $125,000; and they conceded that the resulting equity in their home (apparently $250,000) was sufficient to fully satisfy their liabilities to respondent (i.e., $210,405), with almost $40,000 left over.  However, they argued that forcing them to sell their house "would be neither fair nor equitable", because it would leave them "with $40,000, no home, poor credit, no pension/retirement funds to speak of, and limited earning ability at age 55."  Their representative's letter of May 27, 2005, added that their house "is owned jointly under a tenancy by the entireties thereby creating serious questions regarding collectability [sic] of any taxes purportedly owed by Mr. Sullivan individually", but did not elaborate on those "questions."

The so-called "collection due process" (CDP) hearing was held as a telephone conference on November 28, 2005, between

---

[5]This $375,000 value was somewhat greater than the $350,000 value reported on their Form 433-A.  And, as is stated below, it is substantially less than the value at which this residence was appraised less than a year later: $538,000.

respondent's hearing officer, Darryl Lee, and the Sullivans' representative; and subsequently, numerous telephone calls and correspondence were exchanged between the hearing officer and the Sullivans' representative.

Petitioners' Latest Proposal

The total of Mr. Sullivan's May 2005 offer ($31,629) and Mrs. Sullivan's May 2005 offer ($10,000) had been $41,629. In February 2006 the hearing officer apparently suggested that he would recommend that his superiors approve an agreement if the Sullivans would increase their offer to $54,000; so on March 8, 2006, their representative sent respondent a letter stating--

> that Mr. and Mrs. Sullivan agree to your recommended lump sum settlement payment of $54,000. The Sullivans' approval is conditioned upon the following:
>
> (1)  the settlement would extinguish any and all alleged tax liabilities (including any and all interest and penalties) which the Sullivans may individually or jointly have for tax years 1993-2004, and
>
> (2)  the settlement would extinguish any and all alleged trust fund tax responsibilities that Mr. Sullivan may have arising from the operation of the Paoli Local Restaurant.
>
> Please advise as to whether we will need to modify and resubmit the Offers in Compromise separately submitted by Mr. and Mrs. Sullivan. Once we have been advised that your recommendation has been approved, the Sullivans will proceed with finalizing in obtaining the home equity loan. * * *

By its literal terms, this March 2006 proposal included Mr. and Mrs. Sullivan's income tax liabilities for the twelve

years 1993 through 2004 and Mr. Sullivan's trust fund penalty liabilities. Those twelve years of income tax included four tax years (1994, 1998, 1999, and 2002) that had not been the subject of the Sullivans' previous offers, and included six years (the same four, plus 2003 and 2004) for which the IRS had not issued any notice of the filing of a lien nor any notice of intent to levy. If the IRS had accepted the March 2006 proposal, the resulting agreement would have "extinguish[ed]" not only the liabilities whose collection is properly at issue in this case (i.e., income tax for the six years 1993, 1995-1997, and 2000-2001) but also income tax liabilities for six additional years (1994, 1998-1999, and 2002-2004) plus the trust fund penalties.

The record before us does not permit a precise calculation of the liabilities that would have been "extinguish[ed]" by the March 2006 offer. However, according to the Sullivans' counsel's letter of May 23, 2005, "the amounts claimed to be due to the IRS" totaled $210,405 at that time, and we will assume that number.[6]

---

[6]This amount apparently includes additions to tax and interest but does not include any income tax for the years 1994, 1998, 1999, or 2002. Counsel's letter of May 2005 appears to reflect an expectation that the crediting of a $105,775 payment that the IRS had allegedly received from the Bankruptcy Court in 2001 (apparently in relation to the employment taxes underlying the trust fund liabilities) would reduce that $210,405 total (which included trust fund liabilities of $115,625). However, as was noted above, in 2007, the district court upheld respondent's determination "that the payment to the I.R.S., agreed on in the
(continued...)

In April 2006 the Sullivans' counsel and the hearing officer discussed (but did not resolve) how the OICs should be revised to allocate the $54,000 amount among the various liabilities involved in the OIC. However, no revised Forms 656 reflecting the $54,000 proposal were ever solicited by the IRS or submitted by the Sullivans; and the Sullivans' counsel's letter made it clear that the hearing officer's recommendation of the $54,000 was contingent upon his receiving, inter alia, an appraisal of the Sullivans' house and information about their mortgage on that house.

On May 12, 2006, the Sullivans' counsel sent the IRS a letter transmitting information that had been requested by the hearing officer and that was intended to persuade the IRS that it should accept the Sullivans' $54,000 proposal. That information included the Sullivans' 2005 joint income tax return showing gross income of $53,384, and bank statements showing account balances of $1,981.43 and $1,320.11. The most significant information pertained to their residence, held jointly by them as tenants by the entirety.[7] They sent the IRS an appraisal of

---

[6](...continued)
Stipulated Order, applied to taxes owed by Paoli Restaurant, Inc., and did not apply to the unpaid employment taxes owed by Plaintiff individually." Sullivan v. United States, 100 AFTR 2d 2007-6204, at 2007-6207.

[7]Under Pennsylvania law, a tenancy by the entirety is a joint estate held by a husband and wife that is protected from
(continued...)

their residence, reporting its value to be $538,000.  This appraised value was $163,000 greater than the estimated value of $375,000 that the Sullivans had provided a year earlier.  The information sent to the hearing officer also included a mortgage statement reflecting a balance due of $73,346.78.  That information provided in May 2006 thus showed that their equity in the house amounted to $464,653.22--an amount more than double the amount of their own estimate of their total tax liability (i.e., $210,405).

---

[7](...continued)
certain types of involuntary transfers:

> A tenancy by the entirety is an estate which exists whenever property is held jointly by a husband and a wife by virtue of title which they acquired after marriage.

> A tenancy by the entirety is an estate "per tout et non per my"; that is, each spouse is seised of the whole of the property and not of any share, divisible part or interest thereof.  The concept arises from the common-law theory that marriage creates a unified holding of property whereby neither spouse maintains an individual interest in entireties property, but rather, both spouses share possession and all rights and enjoyment arising therefrom.

> * * * * * * *

> An estate by the entirety differs from a joint tenancy in that the right of survivorship cannot be defeated by a conveyance by one of the spouses, nor by an involuntary transfer of the interest of one of the spouses.

"Tenancy by Entirety in General", 26 Pennsylvania Law Encyclopedia sec. 42 (2007)(fn. refs. omitted).

The Appeals Officer's Determination, and the Commencement of
This Suit

On July 7, 2006, after having received the May 2006 letter
and exhibits that showed the Sullivans to have net assets
substantially greater than their total tax liability, the IRS
appeals officer[8] rejected all three of the OICs that the
Sullivans had submitted on Form 656.  Each of the three
Forms 5402-c, Appeals Transmittal and Case Memo, reflecting that
decision for each OIC had an attached "Appeals Case Memorandum",
evidently prepared by the hearing officer, that included
identical language:  "As the total of equity in assets exceeds
the liability, there is no basis for an offer in compromise."
In making that judgment, the hearing officer had discounted the
Sullivans' equity of $464,653 by approximately 25 percent to

---

[8]The hearing had been conducted by Mr. Lee, whom we refer to
here as the "hearing officer".  His recommendations to reject the
OICs and to issue determinations to proceed with collection were
approved and issued by Ms. Laura Weening, the Appeals Team
Manager, whom we refer to as the "appeals officer".  Petitioners'
briefs as quoted here use the pronouns "he" and "his" to refer to
the appeals officer who exercised discretion to make the
determinations at issue here, and we do not correct those
pronouns.  The distinction between the hearing officer and the
appeals officer is not material here.  Section 6330(b)(1)
provides that the hearing "shall be held by the Internal Revenue
Service Office of Appeals" (emphasis added); section 6330(b)(3)
provides that the hearing may be "conducted by an officer or
employee" of the Office of Appeals (emphasis added); and
section 6330(c)(3) provides that the determination is made "by an
appeals officer" (emphasis added); and the statute does not
require that the "appeals officer" making the determination must
be the same person as the "officer or employee" conducting the
hearing.

$357,400, for reasons not explained in the record.  The memoranda attached to the Forms 5402-c further show that the Sullivans' joint OIC of $34,017 was rejected because the Sullivans had not demonstrated that a special circumstance existed to support a compromise of the liability, and that the Sullivans' individual OICs were rejected because no special circumstances existed, there was no doubt as to liability, and there was therefore no basis for accepting an OIC.  The Office of Appeals did not solicit any amended Form 656 reflecting the Sullivans' $54,000 proposal, and it thereby implicitly rejected that proposal.

On July 7, 2006, the IRS issued three Notices of Determination Concerning Collection Action(s) under Section 6320 and/or 6330: one such notice to Mr. Sullivan, determining to uphold its liens and proceed with a levy to collect income tax for 1993 and 1995; a second notice to Mr. and Mrs. Sullivan jointly, determining to proceed with a levy to collect income tax for 2000 and 2001; and a third notice to Mr. and Mrs. Sullivan jointly, upholding the filing of a tax lien as to income tax for 1996, 1997, 2000, and 2001.  In response, Mr. and Mrs. Sullivan timely filed a petition with this Court.

Resolution of the Trust Fund Penalties in District Court

The Sullivans' original petition in this Court sought the Court's collection review as to both the six years of income tax and the trust fund penalties; but by our order of November 24,

2006, we granted respondent's motion to dismiss the petition in part, for lack of jurisdiction, to the extent that, inter alia, it sought review of the IRS's collection of the trust fund penalties. Mr. Sullivan then filed suit in federal district court to obtain that court's review, under section 6330(d), of the IRS's proposed collection of the trust fund penalties. The district court held that Mr. Sullivan was liable for the penalties, that his liability was not discharged in bankruptcy, "that Plaintiff had sufficient equity to pay the taxes and that imposing a levy was the 'most efficient method of collection remaining.'" Sullivan v. United States, 100 AFTR 2d 2007-6204, at 2007-6207 (E.D. Pa. 2007).

The Sullivans were subsequently granted leave to file an amended petition in this Court, and the amended petition requests this Court's review as to only the six years of income taxes and asks this Court to find that the appeals officer abused her discretion in rejecting the Sullivans' $54,000 proposal. Shortly thereafter, the parties submitted a stipulation of facts pursuant to Rule 122, which provides that "Petitioners' [sic] are not challenging the underlying liability in this Tax Court Proceedings [sic]", and "Petitioners' [sic] are challenging that the settlement officer abused his discretion by not accepting petitioners' offer-in-compromise in the amount of $54,000".

Discussion

I.   The Tax Court Has Jurisdiction Under Section 6330 To Review
     the IRS's Proposed Collection of Petitioners' Income Tax
     Liabilities for Six Years.

The facts of this case present a logical puzzle as to this
Court's jurisdiction, because of the mixed nature of the
Sullivans' OICs.

     A.   Petitioners' Offers-in-Compromise Included Other Income
          Tax Liabilities and Trust Fund Penalty Liabilities, the
          Collection of Which Is Outside This Court's
          Jurisdiction To Review.

The IRS sent to the Sullivans various notices of its filing
of liens, and of its intent to levy, with respect to
Mr. Sullivan's individual unpaid income taxes for two years (1993
and 1995) and Mr. and Mrs. Sullivans' joint unpaid income taxes
for another four years (1996, 1997, 2000, and 2001); and this
Court has jurisdiction to review that proposed collection of
income taxes.  However, one of the lien notices also included
Mr. Sullivan's liability for trust fund penalties; and as a
further complication, the Sullivans' OICs--the IRS's rejection of
which must now be reviewed for abuse of discretion--offered to
pay a given amount to satisfy not only the income tax liabilities
for those six years, but also (i) the Sullivans' income tax
liabilities for several other tax years for which they had

received no collection notices or determinations from the IRS,
and (ii) Mr. Sullivan's liability for trust fund penalties.[9]

The appeals officer rejected the OICs and determined to
proceed with collection. The appeals officer's determinations
were issued before October 16, 2006, at a time when this Court
had no jurisdiction to review the IRS's proposed collection as to
the trust fund penalties. See Moore v. Commissioner, 114 T.C.
171 (2000). Furthermore, this Court has jurisdiction to review
the collection activities of the Commissioner only with respect
to tax liabilities for which a valid notice of determination was
issued. Sec. 6330(d)(1). Here, valid notices of determination
were issued as to collection of only six years of the Sullivans'
income tax liabilities, and we have no jurisdiction to review the
IRS's collection activity as to their income tax liabilities for
other tax years. Consequently, respondent moved to dismiss the
petition in part, insofar as it pertained to those liabilities
whose collection is outside this Court's jurisdiction to review,

---

[9]First, in April 2005 the Sullivans filed their joint OIC,
offering to pay $34,017 to satisfy income tax liabilities and
trust fund penalties. Second, in May 2005 Mr. Sullivan made
another OIC and offered to pay $31,629 to satisfy his income tax
liabilities and trust fund penalties. (Mrs. Sullivan
simultaneously made an OIC, offering to pay $10,000 to satisfy
income tax liabilities only.) Third, in March 2006 the Sullivans
jointly made an informal written proposal to pay $54,000 to
satisfy all of their income tax liabilities for twelve years, and
Mr. Sullivan's trust fund penalties.

and this Court granted that motion by its order of November 24, 2006.

B.   This Court Has Jurisdiction To Review the IRS's Proposed Collection of the Income Tax Liabilities for Six Years and, in So Doing, To Consider Facts Relating to the Other Liabilities That Were Included in Petitioners' OICs.

The record is thus clear that this Court now retains jurisdiction to review respondent's proposed collection of income tax for only six of the years--Mr. Sullivan's liability for income tax for 1993 and 1995, and the Sullivans' joint liability for income tax for 1996, 1997, 2000, and 2001.  The Court must now determine whether the appeals officer abused her discretion in determining to proceed with collection of those liabilities notwithstanding the Sullivans' OICs, which she determined to reject.  However, the Sullivans' OICs proposed compromises of both the liabilities whose collection is properly before us and the extra-jurisdictional liabilities.  The Sullivans' OICs proposed to compromise both sets of liabilities in one agreement; and the appeals officer made a determination (which either was or was not an abuse of her discretion) to reject each OIC and proceed with collection.  This prompts the question whether and how this Court can evaluate that decision without addressing matters outside its jurisdiction.

One answer, which is not tenable, would be that the Court should simply ignore the existence of the extra-jurisdictional

liabilities and should evaluate the OICs (and the appeals officer's rejection of the OICs) as if those liabilities did not exist.  Under that approach, the Court would simply consider whether the amount that the Sullivans had offered should have been accepted in satisfaction of the six years of income tax only (without regard to the OIC's effect on the extra-jurisdictional liabilities).  We decline to follow this approach for two reasons:  First, this Court would be reviewing a hypothetical decision that was never made by the appeals officer, instead of reviewing her actual decision.  And second, ignoring an extra-jurisdictional liability that an OIC would have required the IRS to compromise could materially alter the reasonableness of the OIC.  An offer to pay $54,000 to satisfy income tax liabilities totaling less than $100,000 is very different from an offer to pay $54,000 to satisfy income tax liabilities and trust fund penalties totaling more than $210,000.  Ignoring some of the liabilities in the OIC could radically distort this Court's review.

A second answer, which is also not tenable, is that when taxpayers have offered a hybrid or mixed OIC that includes extra-jurisdictional liabilities, this Court is required to dismiss the petition altogether.  However, this Court has not taken that

approach,[10] and for good reason:  The Court has jurisdiction to review proposed collection of petitioners' income tax liabilities for which a valid notice of determination was issued; and the matter that it lacks jurisdiction to review is collection of the other liabilities.  This Court is disabled from halting the IRS's collection of these other liabilities, but it is not disabled from knowing about them.  In determining whether the rejection of the OICs and the collection of the six years of income tax is appropriate, this Court is authorized (as the appeals officer was required) to consider "any relevant issue relating to * * * the proposed levy".  Sec. 6330(c)(2)(A), (d).

In reviewing the appropriateness of a collection action, the Court must inevitably consider facts in addition to the tax liabilities whose collection is at issue.  For example, although this Court has no jurisdiction to adjudicate the Sullivans' liability for their mortgage, it can and must consider the mortgage as a fact in determining the quantum of their equity interest in their residence.  Similarly, although this Court has no jurisdiction to adjudicate Mr. Sullivan's liability for the

---

[10]See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004) (reviewing an OIC that covers income tax liabilities for tax years that are both within and outside of this Court's jurisdiction), affd. 412 F.3d 819 (7th Cir. 2005); Milnes v. Commissioner, T.C. Memo. 2003-62 (reviewing the Commissioner's determination to proceed with the collection of income tax liabilities and dismissing the case as to the Commissioner's determination to collect extra-jurisdictional liabilities).

trust fund penalties, nor to halt respondent's collection of those penalties, the Court nonetheless can and must consider the trust fund penalties (and their inclusion in the OIC) as a fact in determining the reasonableness of the offer.

We therefore proceed to evaluate the appeals officer's exercise of discretion in rejecting the OICs, taking into account all the liabilities that were proposed to be compromised, even though we do not have jurisdiction to review the collection of all those liabilities.

II.  The Appeals Officer Did Not Abuse Her Discretion in Rejecting Petitioners' OICs and Determining To Proceed With Collection.

A.  The Internal Revenue Code Provides the IRS's Collection Procedures, the Agency Hearing to Which a Taxpayer Is Entitled, and the Court Review to Which the Agency Determination Is Subject.

If a taxpayer fails to pay any Federal income tax liability after notice and demand, chapter 64 of the Internal Revenue Code provides two means by which the IRS can collect the tax:  First, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323(f) authorizes the IRS to file notice of that lien.  Second, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.

However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Collections", and those provisions

must be complied with after the IRS files a tax lien, and before the IRS can proceed with a levy:  Within five business days after filing a notice of tax lien, the IRS must provide written notice of that filing to the taxpayer.  Sec. 6320(a).  After receiving such a notice, the taxpayer may request an administrative hearing before the Office of Appeals.[11]  Sec. 6320(b)(1).  Similarly, before proceeding with a levy, the IRS must issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before the Office of Appeals.  Sec. 6330(a) and (b)(1).

At that CDP hearing, the taxpayer may generally raise relevant issues relating to the unpaid tax or the proposed levy, including offers of collection alternatives.  Such collection alternatives may include, among other things, an installment agreement or offer in compromise.  Sec. 6330(c)(2)(A).  The appeals officer must make a determination whether or not the lien should be released and/or whether the proposed levy action may proceed.  The appeals officer is required to take into consideration: (1) "verification from the Secretary that the requirements of any applicable law and administrative procedure have been met" (see sec. 6330(c)(3)(A), citing sec. 6330(c)(1));

---

[11]To the extent practicable, a CDP hearing concerning a lien (under sec. 6320) is to be held in conjunction with a CDP hearing concerning a levy (under sec. 6330), and the conduct of the lien hearing is to be in accordance with the relevant provisions of section 6330.  See sec. 6320(b)(4), (c).

(2) relevant issues raised by the taxpayer (see sec. 6330(c)(3)(B), citing sec. 6330(c)(2)[12]); and (3) "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary" (see sec. 6330(c)(3)).  If the Office of Appeals then issues a notice of determination to uphold the lien and/or to proceed with the proposed levy, the taxpayer may appeal the determination to this Court within 30 days (see secs. 6320(c), 6330(d)(1)), as the Sullivans have done.

B.    In Their CDP Hearing, the Sullivans Offered To Pay $54,000 To Extinguish Liabilities of No Less Than $210,405.

The Sullivans' sole remaining contention here, stated in the parties' stipulation, is "that the settlement officer abused his discretion by not accepting the Sullivans' offer-in-

---

[12]Under section 6330(c)(2), a taxpayer may raise collection issues under subsection (c)(2)(A) and may, under certain circumstances, challenge the underlying tax liability under subsection (c)(2)(B).  Where the underlying tax liability is properly at issue in a section 6330 hearing, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000).  However, where the underlying liability is not at issue, we review the appeals officer's determinations regarding the collection action for an abuse of discretion. Goza v. Commissioner, 114 T.C. 176 (2000).  The Sullivans have not challenged their underlying liability.  Accordingly, we review the IRS's determinations for abuse of discretion; that is, whether the determinations were arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000).

compromise in the amount of $54,000."[13]  As is noted above, one of the issues that a taxpayer may raise in a collection hearing is "offers of collection alternatives, which may include * * * an offer-in-compromise."  Sec. 6330(c)(2)(A)(iii).

The regulations require OICs to be submitted on "forms prescribed by the Internal Revenue Service", sec. 301.7122-1(d)(1), Proced. & Admin. Regs. (26 C.F.R.).  The prescribed form for an OIC is Form 656, but the Sullivans' latest proposal of $54,000 was not stated on a Form 656.  However, they had previously submitted three OICs on Form 656; they had submitted financial information on Form 433-A and otherwise; they made their revised proposal in writing; and they expressly offered to submit a revised Form 656.[14]  The $54,000 proposal originated as a recommendation from the hearing officer, so there is no

---

[13]Since the Sullivans' sole remaining contention here relates to their proposal to pay $54,000, and since the amount of that proposal was greater than the amounts offered in their prior OICs (i.e., $34,017 and $41,629), we need not address separately whether the appeals officer abused her discretion in rejecting the prior OICs for lesser amounts.

[14]The facts of this case are thus plainly different from those of Godwin v. Commissioner, T.C. Memo 2003-289, 86 TCM (CCH) 451, 457 (2003), affd. 132 Fed. Appx. 785 (11th Cir. 2005).  In that case, the taxpayers "did not submit a Form 656 or otherwise describe their income, assets, and other financial information * * *.  Instead petitioners attempted to settle their entire liability for $100,000 without providing any facts to support their claimed inability to pay the full tax liability".  But see infra note 21.

suggestion that the IRS failed to consider the proposal because of its informality.

Rather, it was understood by both parties that the Sullivans were offering $54,000 to extinguish liabilities estimated to be $210,405.  Consequently, the $54,000 proposal--although not a formal OIC for purposes of section 7122--did constitute a "collection alternative" that was properly raised at the CDP hearing under section 6330(c)(2)(A)(iii) and is subject to our review.

  C.   The Appeals Officer Did Not Abuse Her Discretion in
       Rejecting Petitioners' $54,000 Proposal, Since She
       Reasonably Concluded That They Had Assets (Chiefly
       Their Home Equity of $464,653.22) That Were Sufficient
       (Even If Discounted to $357,400) To Pay Their Estimated
       Liability of $210,405.

Where, as here, the underlying tax liability is not at issue, we review the Commissioner's determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  This standard does not require us to decide what we think would be an acceptable OIC.  Murphy v. Commissioner, 125 T.C. 301, 308-310 (2005), affd. 469 F.3d 27 (1st Cir. 2006).  Rather, our review is to determine whether the appeals officer's rejection of the Sullivans' OIC was arbitrary, capricious, or without sound basis in fact or law.  See id.

The grounds for compromise of a tax liability are (i) doubt as to liability (DATL), (ii) doubt as to collectibility (DATC), and (iii) promotion of effective tax administration (ETA).  Sec.

301.7122-1(b), Proced. & Admin. Regs.  Mr. and Mrs. Sullivan made their original joint OIC on grounds of ETA and their later individual OICs on grounds of DATL and DATC.  Since the Sullivans thus raised all three grounds for compromise in their prior OICs submitted on Form 656, we consider all three grounds in evaluating their $54,000 proposal.

### 1.   Doubt as to Liability Is Not an Issue.

Whether the appeals officer abused her discretion in determining that there is no DATL is not an issue here. Asserting doubt as to liability is equivalent to challenging the underlying liability under section 6330(c)(2)(B),[15] and the Sullivans have stipulated that they are not challenging underlying liability in this case.

---

[15]See Baltic v. Commissioner, 129 T.C. 178, 183 (2007); Yesse v. Commissioner, T.C. Memo. 2008-157 ("a challenge to the amount of the tax liability made in the form of an offer-in-compromise based on DATL by a taxpayer who has received a notice of deficiency is a challenge to the underlying liability precluded by section 6330(c)(2)(B)").  For most of the liabilities included within the Sullivans' OICs, such a challenge would be legally precluded here.  As to the trust fund penalties, Mr. Sullivan was held liable in Sullivan v. United States, supra. As to the income taxes for 1993, 1995, 1996, and 1997, the Sullivans received statutory notices of deficiency and chose not to petition this Court; they therefore are barred by section 6330(c)(2)(B) from contesting that liability.

2.  The Appeals Officer Reasonably Ruled Out Doubt as to Collectibility, as a Basis for an OIC.

    a.  Doubt as to Collectibility Is Determined By Reference to Published Standards.

The appeals officer did not abuse her discretion in determining that there was no doubt as to collectibility. The guidelines for evaluating OICs on the basis of DATC are published in the regulations interpreting section 7122. See sec. 301.7122-1(c)(2), Proced. & Admin. Regs.; see also 1 Administration, Internal Revenue Manual (IRM), pt. 5.8.4.4, at 16,306. Under this administrative guidance, the Secretary will generally compromise a liability on the basis of DATC only if the liability exceeds the taxpayer's reasonable collection potential. See Murphy v. Commissioner, supra at 308-310; Schwartz v. Commissioner, T.C. Memo. 2008-117. Furthermore, an OIC based on DATC will be acceptable only if the offer reflects the taxpayer's reasonable collection potential, i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies. Murphy v. Commissioner, supra at 309; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. A taxpayer's reasonable collection potential is determined, in part, using the published guidelines for certain national and local allowances for basic living expenses and essentially treating income and assets in excess of those needed for basic living expenses as available to satisfy

Federal income tax liabilities.  See 2 Administration, IRM, exh. 5.15.1-3, at 17,668, exh. 5.15.1-8, at 17,686, exh. 5.15.1-9, at 17,742.

              b.    The Amount of Petitioners' Equity in Their Residence Removed Doubt as to Collectibility.

In this instance it is simple to determine that the Sullivans' collection potential exceeded their liability.  Their reasonable collection potential, absent special circumstances, was equal to no less than their equity in their house.  Even the Sullivans' original lowball estimate of their house's value, given in the May 2005 letter accompanying their individual OICs, showed that their equity exceeded their total tax liability by almost $40,000.  The appraisal they later submitted in May 2006 showed that their equity interest in their house was in fact $464,653.22--an amount that was more than double the $210,405 of tax liabilities they tried to settle, and that was more than eight times the amount of their latest proposal of $54,000.[16] Even if one were to assume (as the Sullivans assert) that neither of them would ever generate income in excess of their living expenses, their reasonable collection potential, which includes both income and assets, was still substantially greater than their total tax liability or their $54,000 offer.

---

[16]The hearing officer's unexplained 25 percent discount of that equity yielded an amount--$357,400--that still greatly exceeded the total liability, and was more than six times their $54,000 proposal.

c.  This Analysis Is Not Changed By the Argument That Petitioners Owned Their Home as Tenants By the Entirety.

The Sullivans argue for the possibility that, under Pennsylvania law, none of the value of their house would be available to satisfy Mr. Sullivan's liabilities, because they owned the property as tenants by the entirety.[17]  This possibility, the Sullivans argue, raises doubt as to collectibility despite the hundreds of thousands of dollars of equity in their house.  This argument does not survive analysis.

The IRS filed a notice of lien and, in deciding whether to compromise the Sullivans' liability, took into account their equity in their home.  The IRS could force a sale of the house upon the severance of the entirety property (e.g., upon the divorce of Mr. and Mrs. Sullivan).  See "Tenancy by Entirety in General", 26 Pennsylvania Law Encyclopedia sec. 42 (2007).

_____

[17]The Sullivans' argument on this issue has evolved.  As previously noted supra p. 10, their only contention at the agency hearing was that the entirety ownership raised "serious" but unstated "questions".  In this litigation, an early version of the argument, in a brief filed July 25, 2007, was that under Pennsylvania law, only 50 percent of the value of their house is available to reduce the tax liability of Mr. Sullivan, who has substantially greater tax liabilities than Mrs. Sullivan.  However, if the appeals officer had anticipated this argument, his evaluation of the OICs could have considered only 50 percent of the $464,653 of equity in the Sullivans' house (i.e., only $232,326) but still determined that the reasonable collection potential was higher than any of their OICs--and higher than the liability.  If the appeals officer had considered only 50 percent of the discounted equity of $375,400 (i.e., only $187,700), the reasonable collection potential was still more than three times the offer of $54,000.

Furthermore, the IRS, through its Federal tax lien, could restrict the Sullivans' ability to extract equity from their home. Thus, even short of forcing an immediate sale,[18] the IRS could reasonably expect the Sullivans to consider the value of an unencumbered title to their home in determining the ultimate value of settling their tax liabilities.

Generally, when the tax liability at issue is owed by only one spouse (as is true for most but not all of the liabilities here) and real estate is held in tenancy by the entirety, it is the IRS's policy to consider 50 percent of that real estate's net realizable equity in calculating a taxpayer's reasonable collection potential. IRS Notice 2003-60, 2003-2 C.B. 643; 1 Administration, IRM, pt. 5.8.5.3.11, at 16,339-5. Furthermore, the Court of Appeals for the Third Circuit (to which an appeal in

---

[18]The IRS did not threaten an immediate forced sale of their house; and had it done so, not the Tax Court but the district court would have had jurisdiction to approve that levy, under section 6334(e); so we do not reach the question whether the IRS could have done so. However, we note that the Sullivans had unpaid joint tax liabilities, and they have suggested no reason that the IRS did not have the right to levy on the jointly held property to collect the joint liability. See Napotnik v. Equibank, 679 F.2d 316, 320 (3d Cir. 1982) ("in Pennsylvania entirety property may be reached by creditors to satisfy the joint debts of husband and wife"); United States v. Eglinton, 71A AFTR 2d 93-3689, 90-1 USTC par. 50,322 (E.D. Pa. 1990) (applying Napotnik to federal tax debts). Whether such a levy to collect the joint liability would thereafter permit the collection of a spouse's separate federal tax liability from his share of the remaining proceeds is a further question we need not reach. But see Fitzgerald v. Fitzgerald, 13 Pa. D. & C.3d 278 (Pa. Ct. Com. Pl. 1979) (after mortgage foreclosure, remaining proceeds retained their entirety character until severance).

this case would lie) endorsed the IRS's receipt and retention of 50 percent of the proceeds of sale of entirety property in the context of dividing the proceeds under Pennsylvania law. See Popky v. United States, 419 F.3d 242, 244-245 (3d Cir. 2005). Where the tenants are jointly liable, there is of course even more reason to consider the property in calculating the tenants' collection potential. In this instance, 50 percent of the Sullivans' equity in their house would have satisfied the entire estimated liability, joint and separate.

The Sullivans argue, however, that their case is distinguishable from Popky because they have no intention or plan to sell their house. Furthermore, they argue that under Pennsylvania law the IRS may never be able to levy on and sell their house, because of its status as entirety property.[19]

---

[19]We do not need to definitively resolve this legal question to decide this case, since for present purposes it is enough that the appeals officer made a reasonable judgment of the Sullivans' collection potential. However, we observe that existing precedent does not appear to favor the Sullivans' argument that entirety property in Pennsylvania is exempt from levy and forced sale by the IRS--even in the case of an attempt to collect only non-joint liabilities of one of the tenants. In United States v. Craft, 535 U.S. 274 (2002), the Supreme Court held that a federal tax lien under section 6321 can attach to entirety property. To date, the Supreme Court has yet to extend Craft's holding to levies or forced sales under section 6331. However, Craft's holding has been extended to levies and forced sales by the IRS, in its IRS Notice 2003-60, 2003-2 C.B. 643, and by the Sixth Circuit, in Hatchett v. United States, 330 F.3d 875, 882 (6th Cir. 2003). Furthermore, in Popky v. United States, 326 F. Supp. 2d 594, 604-605 (E.D. Pa. 2004), affd. 419 F.3d 242 (3d Cir. 2005), the district court followed Hatchett, and its opinion was
(continued...)

However, under Sego v. Commissioner, 114 T.C. at 610, we review respondent's determination for abuse of discretion, and we decline to hold that the appeals officer abused her discretion in her estimate of the Sullivans' reasonable collection potential. Absent a showing of special circumstances (discussed below), the Sullivans' $54,000 proposal was inadequate under the regulations, when compared even to 50 percent of the value of the entirety property. See Popky v. United States, supra; Murphy v. Commissioner, 125 T.C. at 309; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

Upon a showing of special circumstances by the taxpayer, the formulaic approach described above is modified, and an OIC may be accepted even if it is for less than the taxpayer's reasonable collection potential, e.g., where a long-term illness prevents the taxpayer from earning a living, and it is reasonably foreseeable that the taxpayer's financial resources will be exhausted providing for care and support during the course of the condition. Sec. 301.7122-1(b)(3), (c)(3), Proced. & Admin. Regs.; see also 1 Administration, IRM, pt. 5.8.11.2.1, at 16,375, pt. 5.8.11.2.2, at 16,377. No such circumstances have been shown

---

[19](...continued)
affirmed by the Court of Appeals for the Third Circuit without discussion or criticism on this point. The district court held that entirety property (in that case, the proceeds of a sale) was subject to levy under section 6331, provided that the procedural requirements of the statute are followed and the property is not otherwise exempt under section 6334. Id.

here.  The Sullivans have not shown that payment of more than the amount that they offered in settlement of their liabilities would have rendered them unable to meet basic living expenses.  Their projections of future income and expenses are speculative and unpersuasive.  The Sullivans' situation is not comparable to the examples given in the regulations.  The appeals officer thoroughly considered and addressed their arguments.

### 3. The Appeals Officer Reasonably Ruled Out Promotion of Effective Tax Administration, as a Basis for an OIC.

The appeals officer did not abuse her discretion in determining that the Sullivans failed to show that their final offer of $54,000 promotes effective tax administration.  Under the regulations,[20] a liability may be compromised in order to promote ETA if there are compelling public policy or equity considerations identified by the taxpayer.  Compromise is justified where, because of exceptional circumstances, collection of the full liability would undermine public confidence that tax laws are being administered fairly.  Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.  Some examples of a compromise that is allowed for purposes of public policy and equity are:  (i) a taxpayer who was hospitalized regularly for a number of years and was unable, at that time, to manage his financial affairs, and (ii) a taxpayer who learns at audit that he was given erroneous

_____

[20]See also 1 Administration, IRM, pt. 5.8, at 16251.

advice and, as a result of actions taken in reliance on it, is facing additional taxes, penalties, and additions to tax. Sec. 301.7122-1(c)(3)(iv), Proced. & Admin. Regs.

The Sullivans have not shown that requiring them to pay more than $54,000 would undermine public confidence that tax laws are being administered fairly. In fact, the opposite may more likely be true: If the IRS had accepted the Sullivans' proposal that they pay no more than a fourth of their total tax liability--and an eighth of their reasonable collection potential--simply because they had endured a number of unfortunate circumstances, such as intermittent unemployment and the bankruptcy of their family business, then taxpayers in similar situations who lose a job or a business, but dutifully pay their taxes nonetheless, might lose confidence in a system that charges some but exempts others when they fail to comply. The Sullivans' situation is not comparable to the examples given in the regulations. The appeals officer considered and addressed their arguments.

In sum, the appeals officer reviewed and considered the information that the Sullivans submitted. On the basis of the Sullivans' facts and circumstances as they had been presented to her, the appeals officer determined that none of the Sullivans' OICs, nor their final offer of $54,000, met the applicable guidelines for acceptance of an OIC with respect to DATL, DATC,

or promotion of ETA.  We find no abuse of discretion in that
determination.

    4.   <u>The Notices of Determination Adequately Address
the Issues</u>.

The Sullivans take exception to the fact that the notices of
determination do not specifically acknowledge that they are in
their fifties, have modest income, and hold few assets aside from
their house.  The Sullivans speculate from this fact that the
appeals officer did not adequately take into account their
special circumstances.  However, their assertions and speculation
are without merit.  The Office of Appeals has no obligation to
specifically list in the notice of determination every single
fact that it considered in arriving at the determination.  See
<u>Johnson v. Commissioner</u>, T.C. Memo. 2007-29; <u>Barnes v.
Commissioner</u>, T.C. Memo. 2006-150.  Nor do we find that the
appeals officer inadequately considered the information actually
given to her by the Sullivans.  In fact, their own calculations
of their net assets and total tax liability support the appeals
officer's conclusion that their total equity in assets exceeded
their liability.

The Sullivans also take exception to the fact that their
$54,000 proposal was not specifically discussed in the notices of
determination, nor was it formally rejected by respondent on a
Form 5402-c.  However, these objections are without merit.
Again, the Office of Appeals has no obligation to list every

single fact that it considered in arriving at its determination. See Johnson v. Commissioner, supra; Barnes v. Commissioner, supra. Furthermore, the IRS cannot be required to issue a formal rejection on Form 5402-c where there has been no formal offer on Form 656.[21] The Sullivans' informal proposal of a payment of $54,000 was adequately addressed when the Office of Appeals determined that the Sullivans' equity in their house (discounted to $357,400) exceeded their estimated liability of $210,405, rendering the proposal unacceptable.

We hold that the appeals officer did not abuse her discretion in rejecting as inadequate the Sullivans' OICs, including their $54,000 informal proposal. Consequently, we sustain the IRS's determination that the proposed levies and the filing of a notice of Federal tax lien were appropriate.

---

[21]For OICs submitted after July 15, 2006, an implicit obligation to reject a formal OIC is reflected in a new subsection 7122(f), which provides: "Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary" within 24 months. (Emphasis added.) This obligation to reject a formal OIC under section 7122(f) is effective only as to OICs submitted on and after the date which is sixty days after the date of enactment, May 17, 2006 (see Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. 109-222, 120 Stat. 345), and thus could not be applicable to the Sullivan's informal offer made on March 8, 2006. Furthermore, this obligation exists only as to an OIC "submitted under this section", and the IRS is entitled to insist on compliance with its regulation requiring that offers under section 7122 be submitted on "forms prescribed by the Internal Revenue Service", sec. 301.7122-1(d)(1), Proced. & Admin. Regs. (As is explained supra pp. 25-27 in part II.B, the Sullivans' informal offer, though not a formal OIC, was a "collection alternative" under section 6330(c)(2)(A)(iii).)

To reflect the foregoing,

Decision will be entered for respondent.