T.C. Memo. 2013-197

UNITED STATES TAX COURT

PAMELA L. LENGUA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19255-12L.                         Filed August 27, 2013.

Pamela L. Lengua, pro se.

<u>Halvor R. Melom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  The petition in this case was filed in response to a

Notice of Determination Concerning Collection Action(s) under Section 6320

and/or 6330 (notice of determination) dated June 27, 2012, upholding a proposed

levy collection action for tax periods ending September 30 and December 31,

[*2] 2008, and September 30 and December 31, 2009. Respondent has abated the trust fund recovery penalty associated with the quarterly period ending September 30, 2008; therefore, that quarterly period is no longer in issue. See Kelby v. Commissioner, 130 T.C. 79, 84-85 (2008), aff'd, 444 Fed. Appx. 950 (9th Cir. 2011). We must consider whether respondent's determination to proceed with the collection action regarding petitioner's section 6672 liabilities for the remaining periods in issue was an abuse of discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

FINDINGS OF FACT

Petitioner resided in California when the petition was filed. Petitioner was president of Hey Baby Enterprises, Inc. (HBE), a California corporation incorporated in January 2008, at all times during 2008 and 2009.

HBE filed Forms 941, Employer's Quarterly Federal Tax Return, for quarterly periods ending September 30 and December 31, 2008, and September 30, 2009. HBE reported tax liabilities of $14,840, $16,988, and $12,602, respectively. HBE did not file a Form 941 for the quarterly period ending

**[*3]** December 31, 2009. Pursuant to section 6020(b), respondent filed a substitute for return for HBE for that quarterly period showing a liability of $32,138. HBE did not pay the tax liabilities in full for the periods in issue.

On March 10, 2010, respondent mailed a Letter 1153 to petitioner's last known address, notifying her of respondent's intent to assess trust fund recovery penalties (TFRPs) pursuant to section 6672 for the periods in issue. The Letter 1153 further notified petitioner that she could request a hearing in response. Petitioner received the letter, but she did not request a hearing in response to it.

As of July 5, 2010, HBE had not fully paid the tax liabilities for the periods in issue. Therefore, respondent assessed against petitioner TFRPs of $8,623, $9,869, $7,002, and $7,167 for the quarterly periods ending September 30 and December 31, 2008, and September 30 and December 31, 2009, respectively.

The assessed balance due for petitioner's TFRP liability for the quarterly period ending December 31, 2008, is currently $9,869; no amounts have been credited against that liability. The assessed balance due for petitioner's TFRP liability for the quarterly period ending September 30, 2009, is currently $7,002; no amounts have been credited against that liability. Finally, the assessed balance due for petitioner's TFRP liability for the quarterly period ending December 31,

[*4] 2009, is currently $7,167; offsetting credits and debits of $18,006 were applied on July 5, 2010.

On January 26, 2011, respondent sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to Hearing, regarding her TFRP liabilities for the periods in issue. On February 28, 2011, petitioner filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request). In the CDP hearing request petitioner wrote: "The amounts listed on the final notice * * * of intent to levy, dated 1-26-11, are incorrect. Not all payments have been credited. Actual amounts are lower." She did not request any collection alternatives.

On March 16, 2011, petitioner sent respondent a letter in which she claimed that she was being assessed for her corporation's tax liabilities, resulting in "double liabilities". On May 13, 2011, respondent sent petitioner a letter explaining the Appeals process.

On February 2, 2012, the settlement officer sent petitioner a letter scheduling a telephone CDP hearing for March 2, 2012. The February 2, 2012, letter explained that the Appeals Office cannot approve an installment agreement or accept an offer-in-compromise unless all estimated tax payments for the current year's income tax liability have been made. The February 2, 2012, letter also

**[\*5]** explained that delinquent estimated tax payments can be included in an installment agreement, but the estimated tax payments must be paid in full before an offer-in-compromise can be accepted. The February 2, 2012, letter noted that petitioner had not made estimated tax payments for 2011. Additionally, the February 2, 2012, letter requested that petitioner provide a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; a completed Form 443-B, Collection Information Statement for Businesses, and other supporting documents; petitioner's unfiled Federal income tax return for 2009; and proof of estimated tax payments for 2009 (collectively, the requested documents). Petitioner did not respond to the February 2, 2012, letter.

Petitioner did not contact the settlement officer on March 2, 2012, for the scheduled telephone CDP hearing. On March 2, 2012, respondent sent petitioner a followup letter, asking her to provide the requested documents within 14 days. On March 15 and 16, 2012, petitioner's husband attempted to reach the settlement officer by phone. The settlement officer declined to discuss the case with him.

On March 16, 2012, a telephone CDP hearing was held. Petitioner explained that her corporate tax liabilities were before another settlement officer and that she was seeking an installment agreement for those liabilities. The

**[\*6]** settlement officer extended the deadline for petitioner to submit the requested documents to March 19, 2012.

On or around March 15, 2012, petitioner provided a Form 433-A and some supporting documentation, which indicated that she had equity of $200,000 in her home. The settlement officer estimated that petitioner's residence was worth $499,800 and was subject to an encumbrance of $179,000. On March 16, 2012, petitioner sent respondent a letter which explained that HBE had made the following voluntary payments: $3,400 on August 24, 2010; $2,500 on September 22, 2010; $2,500 on October 22, 2010; and $2,500 on November 24, 2010. The settlement officer verified these payments and determined that they had been applied to the quarterly period ending September 30, 2008. On May 11, 2012, the settlement officer spoke with petitioner and suggested that she take out a loan to pay her TFRP liabilities.

On June 27, 2012, respondent issue the notice of determination, sustaining the levy and delaying collection until January 1, 2013. Respondent delayed collection to give petitioner time to refinance the mortgage on her residence. In the notice of determination the settlement officer verified that all requirements of applicable law and administrative procedure had been met. The settlement officer also determined that the collection action balanced the need for efficient collection

**[*7]** of unpaid penalties with the legitimate concern that such actions be no more intrusive than necessary.

On July 31, 2012, petitioner filed the petition with this Court, stating: "The IRS has incorrectly imposed a civil penalty liability on me personally."

OPINION

I.     Trust Fund Recovery Penalty

Section 6672(a) imposes a penalty--commonly referred to as the TFRP--for willfully failing to collect, account for, and pay over income and employment taxes of employees. These penalties are assessed and collected in the same manner as taxes against a person who is "an officer or employee of a corporation * * * who as such officer, [or] employee * * * is under a duty to perform", in this case, the duties to which section 6672 refers. Sec. 6671(b). Such persons are referred to as "responsible persons", a term which may be broadly applied. Mason v. Commissioner, 132 T.C. 301, 321 (2009).

The parties stipulated that petitioner is the responsible person for HBE; i.e., the person required to collect, truthfully account for, and pay over the tax liabilities shown on the Forms 941 for HBE for the periods in issue. The parties further stipulated that petitioner is liable for the TFRPs assessed on July 5, 2010.

**[*8]** II.     Scope of Review

Under certain circumstances a taxpayer may raise challenges in a CDP proceeding to the Commissioner's determination of his or her underlying tax liabilities.  See sec. 6330(c)(2)(B).  A taxpayer may challenge in a CDP proceeding the amount of the tax assessed by the Commissioner if he or she did not receive a statutory notice of deficiency or did not otherwise have an opportunity to dispute the tax liability.  Id.; see also Montgomery v. Commissioner, 122 T.C. 1, 7 (2004).  Moreover, the Court will consider an underlying tax liability on review only if the taxpayer properly raised the issue during the CDP hearing.  Giamelli v. Commissioner, 129 T.C. 107, 112-116 (2007); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Where the assessments against the taxpayer are TFRPs, the Commissioner does not issue or mail a notice of deficiency.  See sec. 6212(a).  Instead, in general the Commissioner must provide the taxpayer with a notice of the TFRPs (section 6672(b) notice) before assessment.  Sec. 6672(b)(1).  A Letter 1153 provides a taxpayer with a section 6672(b) notice and the means of protesting a proposed TFRP administratively with the Commissioner.  Mason v. Commissioner, 132 T.C. at 317.  We have held that the receipt of Letter 1153 constitutes an opportunity to dispute the taxpayer's liability within the meaning of section 6330(c)(2)(B).  E.g.,

[*9] Solucorp, Ltd. v. Commissioner, T.C. Memo. 2013-118; Morgan v. Commissioner, T.C. Memo. 2011-290.

On March 10, 2010, respondent sent petitioner a Letter 1153 notifying her of respondent's intent to assess TFRPs for the periods in issue. Petitioner received it, but she did not respond to it or contest the proposed amounts. Petitioner thus had a prior opportunity to challenge the underlying liabilities. See Mason v. Commissioner, 132 T.C. at 317-318; Solucorp, Ltd. v. Commissioner, T.C. Memo. 2013-118. Consequently, petitioner was precluded from challenging the underlying liabilities during her CDP hearing.

Petitioner disputes the underlying liabilities in her petition, claiming that the section 6672 penalties were duplicative of her corporation's employment tax liabilities, that her corporation is on an installment agreement, and that payments made by her corporation have not been properly credited. Because petitioner was precluded from challenging the underlying liabilities during her CDP hearing, she is likewise precluded from challenging them before this Court.

Even if petitioner could challenge her underlying liabilities before this Court, her claims would fail. Petitioner does not dispute that she, as the president of her corporation, has the power to ensure that it complies with its legal obligation regarding employment taxes. The liability imposed on responsible

[*10] persons pursuant to section 6672 is separate and distinct from an employer's liability for trust fund taxes. Mason v. Commissioner, 132 T.C. at 321; see also Solucorp, Ltd. v. Commissioner, at *12. Consequently, the Commissioner is not required to attempt to collect the underlying trust taxes from the employer before attempting to collect section 6672 penalties against a responsible person pursuant to section 6672. See Mason v. Commissioner, 132 T.C. at 321; see also United States v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir. 1986); Hornsby v. IRS, 588 F.2d 952, 954 (5th Cir. 1979). Petitioner's liabilities for section 6672 penalties are separate and distinct from HBE's Form 941 tax liabilities. See Freeman v. Commissioner, T.C. Memo. 2011-38.

Because the validity of the underlying liabilities as determined by the Commissioner are not properly in issue, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

III. Abuse of Discretion

An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

[*11] Section 6330(c)(3) requires the settlement officer to consider the following during a CDP hearing: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. See also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001). We note that the settlement officer in this case properly based her determination on the factors specified by section 6330(c)(3).

Petitioner did not request any collection alternatives at the hearing. In addition, petitioner filled out a Form 433-A on March 15, 2012, and provided supporting documents. The Form 433-A states that petitioner had no monthly income, had $300 in her bank account, and had $200,000 of equity in a residence. The settlement officer estimated that the value of the residence was $499,800, with an encumbrance of $179,000, which left $321,000 in available equity. The settlement officer concluded that petitioner would have sufficient assets to pay her liabilities if she obtained a loan. The levy action was suspended in order to give petitioner time to refinance the mortgage on her residence.

**[\*12]** The settlement officer did not abuse her discretion by determining that petitioner did not qualify for collection alternatives because petitioner had sufficient assets to pay the liabilities in full. We have held that there is no abuse of discretion for failing to consider a collection alternative when the taxpayer failed to submit a collection alternative for review. See Kendricks v. Commissioner, 124 T.C. 69, 79 (2005). Moreover, it is proper to include the equity in real estate owned by the taxpayer in a computation of available assets. See Sullivan v. Commissioner, T.C. Memo. 2009-4. The Internal Revenue Manual pt. 5.15.1.26(3) (May 9, 2008) states that "[t]he equity in real estate should be pursued as a means to full[y] pay or reduce the tax liability." It also instructs Appeals officers to ask the taxpayer to secure a loan and that the taxpayer's "[r]efusal to pro-actively seek a loan will be considered refusal to pay". Id.; see also Antioco v. Commissioner, T.C. Memo. 2013-35, at \*19. The settlement officer gave petitioner time to arrange a loan. Consequently, we hold that the settlement officer did not abuse her discretion in upholding the proposed collection action.

We have considered the other arguments of the parties, and they are either without merit or need not be addressed in view of our resolution of the issue.

**[*13]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.