T.C. Memo. 2010-52

UNITED STATES TAX COURT

MAYER INVESTMENT COMPANY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3844-08L.               Filed March 18, 2010.

<u>Harry Anthony Tipping</u>, for petitioner.

<u>Anita A. Gill</u> and <u>Dennis G. Driscoll</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner

seeks review of respondent's determination to proceed with

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  Amounts
are rounded to the nearest dollar.

collection of its unpaid 2003 additions to tax.  The issue for decision is whether the Internal Revenue Service (IRS) Appeals Office abused its discretion in sustaining the IRS's proposed levy action against petitioner and denying petitioner's offer-in-compromise (OIC) based on doubt as to collectibility with special circumstances.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference.  At the time petitioner filed its petition, petitioner was incorporated in Ohio.

## I.  Mayer Investment Co.

Petitioner's sole shareholders in 2003 were Charles W. Mayer, Jr., the 89-year-old founder of the company, and his nephew, Keith Barton.  Petitioner's primary assets in 2003 were an 85-year-old building in Akron, Ohio, and two adjoining parking lots.  Petitioner leased space in the building to commercial tenants.

Mr. Mayer served as the president of petitioner and was responsible for the company's day-to-day operations until March 2005, when he was confined to a nursing home and his sons, Rory and Jeffrey, assumed control of petitioner.  Mr. Mayer failed to make petitioner's 2003 estimated tax payments or timely file

petitioner's 2003 Form 1120, U.S. Corporation Income Tax Return. However, Mr. Mayer paid every other bill that came due for petitioner in 2003.

Petitioner engaged in several major financial transactions in 2003. In March petitioner received $66,806 from Union Central Life Insurance Co. for the cash surrender value of a life insurance policy on Mr. Mayer and promptly transferred these funds to Mr. Mayer. Throughout the year petitioner transferred a total of $43,400 to Charles Mayer Studios, Inc., a struggling commercial photography business owned by Mr. Mayer.

Petitioner also found itself in the middle of a real estate dispute in 2003. During the first half of 2003 petitioner sold a parking lot for $300,000 and deposited $205,347 of the proceeds into its checking account. In July petitioner wrote two checks to Mr. Mayer from the proceeds in the total amount of $146,803. In November petitioner placed $90,000 from the proceeds into an escrow account because of a civil complaint filed against the company by Mr. Barton (Barton litigation). The funds were not released from escrow until early 2005.

On April 11, 2005, petitioner filed and paid the tax shown on its 2003 Form 1120, which contained Mr. Mayer's signature.

II.  Collection Action

   A.  Abatement

On May 30, 2005, respondent assessed section 6651 and section 6655 additions to tax against petitioner in the total amount of $21,936 for tax year 2003.  On July 7, 2005, petitioner filed a Form 843, Claim for Refund and Request for Abatement, in which petitioner stated that reasonable cause existed to remove the additions to tax because petitioner lacked the funds to timely pay the 2003 additions to tax.  The reason given was the restriction on access to the $90,000 placed in escrow on account of the Barton litigation.  Petitioner also stated that payment of the additions to tax would impose an extreme hardship on petitioner.  On October 4, 2005, the IRS denied petitioner's request for abatement.

On October 21, 2005, petitioner sent the IRS a letter appealing the denial of its abatement request.  In its letter petitioner reiterated the financial distress arguments it had asserted in its Form 843.  On July 10, 2006, petitioner sent the IRS an additional letter which stated that Mr. Mayer was suffering from Alzheimer's disease and dementia in 2003.  On July 18, 2006, the Appeals Office responded by noting that petitioner made no attempt to provide supporting documentation for its contention that Mr. Mayer suffered from Alzheimer's disease.

B.     Telephone Hearings

On October 22, 2005, respondent issued to petitioner a Notice of Intent to Levy and Notice of Your Right to a Hearing for 2003.  On October 28, 2005, petitioner requested a section 6330 hearing.  Telephone conferences with the Appeals Office were held on August 16, 2006, February 21, 2007, and November 6, 2007.  At one or more of these scheduled conferences, petitioner informed the Appeals Office that Mr. Mayer was in a nursing home on account of his poor health.

C.     Offer-in-Compromise

On February 9, 2007, petitioner submitted an offer-in-compromise (OIC) of $4,000 based on doubt as to liability and doubt as to collectibility with special circumstances. Petitioner's OIC reiterated the financial distress arguments presented in its Form 843.  On June 20, 2007, in support of the OIC, petitioner submitted a Form 433-B, Collection Information Statement for Businesses, signed by its vice president, Jeffrey W. Mayer.  Petitioner's Form 433-B indicated that petitioner had the following assets:  (1) Notes receivable of $354,600 from Charles Mayer Studios, Inc.; (2) notes receivable of $164,860 from Mr. Mayer; (3) two parcels of unencumbered real property consisting of a commercial building and parking lot valued at $468,630 and $42,880, respectively; (4) $8,104 in cash in a First Merit Bank checking account; and (5) net monthly income of

$1,825. The total value of the assets listed on petitioner's Form 433-B was $1,039,074.

On July 17, 2007, the IRS offer examiner sent petitioner an OIC analysis which determined that petitioner had a reasonable collection potential of $620,314. On July 27, 2007, petitioner sent the IRS a letter disagreeing with the offer examiner's analysis. Petitioner's letter explained that the building required extensive repairs and that the accounts receivable were unlikely to be collected.

On November 26, 2007, the Appeals Office sent petitioner a letter rejecting petitioner's OIC. The letter stated that the Appeals Office rejected petitioner's doubt as to liability claim because the petitioner had failed to show reasonable cause and rejected petitioner's doubt as to collectibility claim because petitioner had sufficient assets to pay the additions to tax. The letter concluded by offering petitioner an installment agreement of $800 to $1,000 per month. Petitioner did not respond to the Appeals Office's offer. On January 18, 2008, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner.

III. Tax Court Petition

On February 13, 2008, petitioner filed a petition with this Court. The petition raised the issue of doubt as to liability by disputing the Appeals Office's rejection of petitioner's request

for a reasonable cause reduction in the additions to tax.  The parties subsequently agreed that the issue for decision is whether the Appeals Office abused its discretion by denying petitioner's OIC based on doubt as to collectibility with special circumstances.[2]

On May 29, 2009, respondent filed a motion in limine requesting the Court to limit the testimony of Jeffrey Mayer, Rory Mayer, and petitioner's employee Dan Reimenschneider to conversations they had had with the Appeals Office and to the explanation of documents that were prepared and provided to the Appeals Office.  The motion also requested that the Court limit all exhibits to documents that were provided to the Appeals Office and that were not expert testimony.  Petitioner objected to the motion.

On June 3, 2009, trial was held in Cleveland, Ohio.  At the conclusion of trial, we granted petitioner's unopposed oral motion to amend the pleadings to conform to proof.

---

[2]Petitioner's original petition did not raise the issue of abuse of discretion due to the Appeals Office's denial of petitioner's OIC based on doubt as to collectibility.  However, on Feb. 12, 2009, respondent consented to trial of the doubt as to collectibility issue under Rule 41(b)(1) by raising it in a motion for summary judgment.  On Mar. 13, 2009, petitioner conceded the doubt as to liability issue in a memorandum in opposition to respondent's motion.

OPINION

## I.   Procedural Issues

At trial, petitioner submitted documents and offered witness testimony regarding Mr. Mayer's medical condition and petitioner's financial situation that were not part of the administrative record of the Appeals Office.  Respondent argues in his motion in limine that we should not consider any evidence in a case brought under section 6330 that was not part of the administrative record.  We need not address the issue raised by respondent's motion in limine because respondent prevails on the merits even if we consider the testimony and documents to which respondent objects.

## II.  Abuse of Discretion

Petitioner argues that respondent abused his discretion by rejecting petitioner's OIC based on doubt as to collectibility with special circumstances.  Petitioner contends the Appeals Office (1) overvalued petitioner's building and outstanding accounts payable in calculating petitioner's reasonable collection potential, (2) failed to consider Mr. Mayer's dementia and Alzheimer's disease, and (3) failed to consider pending litigation that encumbered petitioner's assets.  Respondent argues that the Appeals Office did not abuse its discretion when calculating petitioner's reasonable collection potential and gave

proper consideration to petitioner's unique situation on the basis of information petitioner provided.

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an OIC is left to the Secretary's discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.

The Commissioner may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the assessed liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under the Commissioner's administrative pronouncements an OIC based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's reasonable collection potential. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. In some cases the Commissioner will accept an OIC of less than the reasonable collection potential if there are "special circumstances". Id. Special circumstances are: (1) Circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to

collect from him an amount equal to the reasonable collection potential; or (2) circumstances justifying acceptance of an amount less than the reasonable collection potential based on public policy or equity considerations. See Internal Revenue Manual (IRM) pt. 5.8.4.3(4) (Sept. 1, 2005). However, in accordance with the Commissioner's guidelines, an OIC based on doubt as to collectibility with special circumstances should not be accepted, even when economic hardship or considerations of public policy or equity circumstances are identified, if the taxpayer does not offer an acceptable amount. See IRM pt. 5.8.11.2.1(11), 5.8.11.2.2(12) (Sept. 1, 2005).

Because the underlying tax liability is not at issue, our review under section 6330 is for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). This standard does not ask us to decide whether in our opinion petitioner's OIC should have been accepted, but whether the Appeals Office's rejection of the OIC was arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, affd. in part and vacated in part 568 F.3d 710 (9th Cir. 2009); Fowler v. Commissioner, T.C. Memo. 2004-163.

The record indicates that the Appeals Office gave adequate consideration to the special factors petitioner raised. The

Appeals Office's letter rejecting petitioner's OIC indicates that

Mr. Mayer's medical condition was a factor examined by the

Appeals Office:

> Also, you stated that the president of the corporation
> is currently in a nursing home due to his health.
> However, the business is still operating and generating
> some income.  Therefore, it is reasonable for the
> Service to be of the opinion that the tax can be
> collected over time.

In its Appeals case memorandum, the Appeals Office also

considered petitioner's claim that petitioner's accounts

receivable will never be paid and that petitioner is operating at

a loss:

> The Offer Specialist determined that the taxpayer has a
> monthly surplus of $1,825, which yields a future income
> potential in excess of $87,600.  The [taxpayer], on the
> other hand, argued that the taxpayer is actually
> operating at a deficit * * * I reviewed the Offer
> Specialist's income and expense analysis and concur
> with her findings.  Neither the taxpayer nor his
> representative presented any information to warrant a
> change * * *

The record provides adequate justification for the Appeals

Office's determination.  Petitioner's assets, although eroded,

are worth many times the amount at issue in the collection

action, and the record does not indicate that petitioner would

experience severe hardship from payment.  Despite the Barton

litigation and the restriction on the $90,000, petitioner was

able to transfer large sums of money in 2003 to support Mr.

Mayer's other business interests.  Finally, although the record

indicates Mr. Mayer experienced symptoms of Alzheimer's disease

in 2003, petitioner was able to satisfy most of its outstanding obligations in 2003 and engage in new business transactions. Unlike taxpayers in other cases where we have found abuse of discretion on account of the ill health of taxpayers, Mr. Mayer was not bedridden or completely unable to manage his financial affairs in 2003. See Sullivan v. Commissioner, T.C. Memo. 2009-4; sec. 301.7122-1(b)(3)(ii) and (c)(3)(iv), Proced. & Admin. Regs.

Petitioner cites Blosser v. Commissioner, T.C. Memo. 2007-323, for the proposition that the Commissioner has an affirmative duty to investigate possible special circumstances raised by a taxpayer in a section 6330 hearing and that the Appeals Office erred by failing to ask petitioner for additional documentation regarding Mr. Mayer's illness and petitioner's financial troubles. Petitioner reads Blosser too broadly. In Blosser, we determined that the Commissioner abused his discretion in denying a taxpayer's proposed collection alternative because the Appeals Office refused to consider the changes in the taxpayer's financial information from the time she completed a collection information statement (CIS).[3] The Appeals Office also failed to consider the taxpayer's excuse, raised at the taxpayer's section 6330 hearing, for not filing a more recent statement or complying

---

[3]The taxpayer in Blosser v. Commissioner, T.C. Memo 2007-323, had lost her job after filing her CIS.

with the Appeals Office's request to file returns for prior years.[4] Blosser does not stand for the proposition that the Appeals Office has an open-ended duty to inquire, but rather that it must make its determination after giving adequate consideration to all meritorious issues a taxpayer raises during a section 6330 hearing.

Petitioner's situation is distinguishable from the facts in Blosser. Petitioner has not shown that any substantial changes in its financial viability took place from the time that it supplied the IRS with its Form 433-B to the time the Appeals Office rejected the OIC. Moreover, the Appeals Office gave consideration to both Mr. Mayer's illness and petitioner's financial health.

The Appeals Office reviewed petitioner's financial information, and considered whether special circumstances existed, at the section 6330 hearing and determined that an OIC was not appropriate. We received as exhibits the financial information presented to the IRS and find that the Appeals Office could have reasonably concluded that there are sufficient income and assets to satisfy the tax liabilities. We also received medical records and heard testimony regarding the special

---

[4]The taxpayer stated in her sec. 6330 hearing that she had been unable to complete a new CIS on account of a family tragedy and did not have to file returns for past years because she had been incarcerated.

circumstances petitioner raised at the hearing and find that the Appeals Office's conclusion that the circumstances did not justify acceptance of an amount less than the reasonable collection potential of petitioner was not arbitrary or capricious.  Accordingly, we find that the Appeals Office did not abuse its discretion in determining to reject petitioner's OIC and proceed with the collection action.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.