# United States Tax Court

T.C. Memo. 2025-114

CRAWFORD PILE DRIVING, LLC,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket Nos. 8914-23L, 8980-23L.                    Filed November 4, 2025.

————————

*Gary R. Dettloff*, for petitioner.

*Rebecca M. Clark* and *Stephanie A. Kingsley*, for respondent.


## MEMORANDUM OPINION

LANDY, *Judge*: In these consolidated collection due process (CDP) cases, the Internal Revenue Service (IRS) issued two notices of intent to levy and a notice of federal tax lien (NFTL) filing to collect unpaid federal unemployment and employment tax liabilities from petitioner, Crawford Pile Driving, LLC (Company). The Company seeks review, pursuant to sections 6320[1] and 6330, of the IRS Independent Office of Appeals' (Appeals Office) determinations to uphold the proposed collection actions. The Commissioner, on June 5, 2025, filed Motions for Summary Judgment contending that there are no disputed issues of material fact and that the determinations to sustain the proposed collection actions were proper as a matter of law. The sole issue for decision is whether the Appeals Office abused its discretion in

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*2] rejecting the Company's offers-in-compromise (OIC). Finding no abuse of discretion, we will grant the Commissioner's Motions.

## *Background*

The following facts are derived from the Petitions, the parties' Motion papers, the Administrative Records, and the Supplemental Administrative Records. *See* Rules 93, 121(c). This background is stated solely for the purpose of resolving the present Motions and not as findings of fact in these cases. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The Company had its principal place of business in Michigan when it petitioned the Court.[2]

I. *The Company's Tax Liabilities*

The Company, a family-run small business owned by Todd A. Crawford, late filed its Form 941, Employer's Quarterly Federal Tax Return, for the tax period ending September 30, 2018. The IRS assessed $45,222 in employment taxes. The IRS also assessed additions to tax pursuant to section 6651(a)(1) for failure to timely file the tax return and section 6651(a)(2) for failure to timely pay the tax; a section 6656 penalty for failure to make deposit of taxes; and statutory interest. As of February 6, 2025, the Company's outstanding Form 941 liability totaled $44,558.

The Company also late filed its Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for taxable year 2017. The IRS assessed $888 in unemployment taxes. The IRS also assessed additions to tax pursuant to section 6651(a)(1) and (2); a section 6656 penalty; and statutory interest. After an examination, the IRS assessed additional unemployment taxes plus a section 6651(a)(1) addition to tax; a section 6656 penalty; and statutory interest. As of February 6, 2025, the Company's outstanding Form 940 liability totaled $11,302.

II. *Issuance of the Levy Notices and the NFTL Filing*

On November 19, 2020, to collect the unpaid Form 941 employment tax liability, the IRS mailed the Company Letter 1058, Final Notice – Notice of Intent to Levy and Notice of Your Rights to a Hearing (First Levy Notice). In addition, on December 1, 2020, the IRS

---

[2] Absent stipulation to the contrary, these cases are appealable to the U.S. Court of Appeals for the Sixth Circuit. *See* § 7482(b)(1)(G)(ii), (2).

**[*3]** filed an NFTL to collect the unpaid Form 941 liability. The IRS sent Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (Lien Notice), dated December 1, 2020, to the Company's Bloomfield Hills, Michigan address, notifying the Company of the NFTL filing. On March 17, 2021, to collect the unpaid Form 940 unemployment tax liability, the IRS mailed the Company Letter 1058, Final Notice – Notice of Intent to Levy and Notice of Your Rights to a Hearing (Second Levy Notice).

In a timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP Hearing Request Form), postmarked December 19, 2020, the Company requested a CDP hearing regarding the Lien Notice and the First Levy Notice and requested collection alternatives (i.e., an OIC and currently not collectible status). In a separate timely filed CDP Hearing Request Form, dated April 13, 2021, the Company requested a CDP hearing regarding the Second Levy Notice, again requesting collection alternatives (i.e., an installment agreement, an OIC, and currently not collectible status). The Company did not dispute the underlying tax liabilities on either CDP Hearing Request Form.

III.    *Initial CDP Hearings and Denial of the OICs*

On March 18, 2021, the Company's case relating to the unpaid Form 941 tax liability was assigned to Settlement Officer (SO) J. Mansager. Subsequently, on May 11, 2021, the Company's case relating to the unpaid Form 940 tax liability was also assigned to SO Mansager. On May 19, 2021, SO Mansager held a telephone CDP hearing regarding both the Form 940 and 941 tax liabilities with the Company's representative, Gary Dettloff. During the CDP hearing, Mr. Dettloff indicated that the Company wanted to pursue an OIC.

Shortly thereafter, on June 17, 2021, SO Mansager received the Company's Form 656, Offer in Compromise, offering $500 to settle its unpaid Form 940 tax liability relating to 2017 and its unpaid Form 941 tax liabilities for ten quarterly periods, including the period ending September 30, 2018, and accompanying Forms 433–B and 433–B (OIC), Collection Information Statement for Businesses. On Form 656 the Company stated doubt as to collectibility as its underlying reason for the OIC.

SO Mansager forwarded the Company's OIC to the Centralized Offer in Compromise unit (COIC) for processing. In a letter dated

[*4] April 5, 2022, the COIC specialist informed the Company that to receive further OIC consideration, it needed to become current with its filing and payment obligations. The Company did not satisfy all its outstanding obligations, and as a result, in a letter dated June 29, 2022, COIC rejected the $500 OIC, closed the cases, and transferred the offer back to the Appeals Office. On July 19, 2022, the Company's cases were assigned to SO L. Moore. Subsequently, on December 9, 2022, the cases were reassigned to SO C. Megyesi.

On January 12, 2023, SO Megyesi held a conference call with Mr. Dettloff. During that call, SO Megyesi requested additional documentation to verify the value of the Company's bank accounts, the equity in the Company's assets, and the income Mr. Crawford received from the Company. Mr. Dettloff sent SO Megyesi the requested documentation, and upon review, SO Megyesi determined that the Company's reasonable collection potential (RCP) was $111,077.

In a letter dated February 24, 2023, SO Megyesi explained to the Company his findings as to the RCP. On Form 14640, Addendum to Form 656, dated March 9, 2023, the Company increased its offer amount to $111,077 and submitted the requisite 20% downpayment required by the Tax Increase Prevention and Reconciliation Act of 2005. During the final offer acceptance process, however, SO Megyesi determined that trust fund recovery penalties had not been assessed for all the periods listed on the offer. As a result, in a letter dated May 12, 2023, SO Megyesi informed the Company that the OIC had been rejected.

IV.    *Tax Court Proceedings*

On May 15, 2023, the IRS issued Notices of Determination Concerning Collection Action Under Section 6320 and/or 6330 (Notices of Determination) to the Company sustaining the First Levy Notice, the Second Levy Notice, and the NFTL filing. On June 5 and 6, 2023, the Company timely petitioned this Court seeking review of the Notices of Determination. In both Petitions the Company asserted that the Commissioner had erred and abused his discretion in that (1) he improperly rejected the Company's OIC by failing to allow it to amend its OIC, and (2) his "extreme and erroneous delaying in processing [the Company's OIC]" caused him to reject the OIC instead of fully considering "fair alternatives such as corrected assessment amounts, applied credits, amended offer amounts, corrected income calculations and actual ability to pay, contrary to the Mission Statement of Appeals."

[*5]    On August 1, 2024, the Commissioner filed two separate Motions to Remand requesting that the cases be remanded to the Appeals Office for a supplemental CDP hearing because of a material change in the Company's factual circumstances. According to the Commissioner's Motions to Remand, the Company was eligible for reconsideration of its previously rejected OIC because there were now valid assessments for all the tax periods included in the OIC. On September 25 and October 1, 2024, the Court granted the Motions to Remand, and these consolidated cases were remanded for supplemental proceedings.

V.    *Supplemental CDP Hearing*

The Company's cases were returned to SO Megyesi, and on November 8, 2024, the parties held the supplemental CDP hearing. During this hearing, SO Megyesi informed the Company that although he was prepared to resubmit the OIC for acceptance, he first needed the Company to file its delinquent 2023 Form 940 and 2023 Form 1120S, U.S. Income Tax Return for an S Corporation. SO Megyesi required the updated financial information because the original $111,077 offer amount was based on the Company's 2020 Form 1120–S, which reflected that the Company was operating at a loss because of the COVID–19 pandemic. On November 15, 2024, the Company sent SO Megyesi the requested returns. Upon review, SO Megyesi determined that, during 2023, the Company had operated at a profit of $849,000 and that its assets increased in value by $364,155.

SO Megyesi informed Mr. Dettloff that the IRS could not accept the Company's original OIC amount given the significant change in the Company's profitability in 2023. Mr. Dettloff indicated that the large profit in 2023 resulted from an advance payment made by a vendor late in the year that could not be offset by its accompanying expenses until 2024. Mr. Dettloff further indicated that the Company was operating at a loss during 2024. Subsequently, SO Megyesi requested a Profit and Loss Statement as well as bank statements to substantiate the Company's contentions. In December 2024 Mr. Dettloff submitted the requested documentation to SO Megyesi.

SO Megyesi reviewed the 2024 Profit and Loss Statement and determined that, contrary to Mr. Dettloff's contentions, the Company had $298,151 in profits through October 2024, the Company was projected to be profitable during 2024, and the amount of equity in the Company's assets was $523,077. Accordingly, SO Megyesi updated the applicable RCP tables and calculated that the Company's RCP was

[*6] $2,312,037. As a result, SO Megyesi concluded that because the Company's financial position had improved considerably since 2020, the original OIC amount was no longer acceptable, and the Company could fully pay its liabilities if it liquidated its assets and paid the IRS $29,816 a month for 60 months. SO Megyesi attempted to discuss the Company's ability to fully pay its liabilities through an installment agreement; however, Mr. Dettloff failed to respond.

SO Megyesi proposed rejection of the Company's OIC. In a fax dated December 23, 2024, Mr. Dettloff indicated that he understood why, based on the documents provided, the Company's OIC had been rejected, and that he would provide more accurate financial information. Mr. Dettloff never provided that documentation. On January 15, 2025, the Commissioner issued Supplemental Notices of Determination rejecting the OIC and sustaining the proposed collection actions. In Status Reports filed January 17, 2025, Mr. Dettloff attached incomplete Profit and Loss Statements purporting to substantiate the claim that the Company did not have sufficient profits to fully pay its liabilities.

*Discussion*

I. *General Principles*

A. *Scope of Review*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We shall grant summary judgment when there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in its pleadings and must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). On the record before the Court, we find that these cases are appropriate for summary adjudication.

B. *Administrative Record*

The parties did not file a stipulated Administrative Record in these cases. On June 7, 2024, the Commissioner, in accordance with Rule 93(a), filed the Administrative Records and Certificates as to the

**[\*7]** Genuineness of the Administrative Records (Exhibits 101-R to 155-R and Exhibits 201-R to 255-R). Subsequently, the Commissioner, on April 9, 2025, filed the supplemental Administrative Records and Certificates as to the Genuineness of the Supplemental Administrative Records (Exhibits 156-R to 167-R and Exhibits 256-R to 267-R), incorporating the documents from the Company's supplemental CDP hearings. The Certificates of Genuineness as to the Administrative Records are signed by SO Megyesi.

The Company has not maintained that the Administrative Records or the supplemental Administrative Records are incomplete or need to be supplemented, nor has it filed a motion to complete or supplement the Administrative Records or supplemental Administrative Records pursuant to Rule 93(b). Therefore, we accept the Administrative Records and supplemental Administrative Records filed by the Commissioner.

C.    *Standard of Review*

Section 6330 provides that during a CDP hearing taxpayers may raise relevant issues (e.g., spousal defenses, the appropriateness of the proposed collection action, and possible collection alternatives). *See* § 6330(c)(2)(A). Taxpayers may dispute the underlying liability during the CDP hearing if they did not receive a Notice of Deficiency or otherwise have a prior opportunity to dispute the liability. *See* § 6330(c)(2)(B). The Court cannot consider issues that were not raised during a CDP hearing. *See Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). When this Court remands a case to the Appeals Office, the second hearing supplements the taxpayers' original CDP hearing and is not a new hearing in and of itself. *Kelby v. Commissioner*, 130 T.C. 79, 86 (2008) (citing *Drake v. Commissioner*, T.C. Memo. 2006-151, *aff'd*, 511 F.3d 65 (1st Cir. 2007)). Hence, we review the administrative position of the supplemental determination. *Id.* at 86–87.

Sections 6320(c) and 6330(d)(1) do not prescribe the standard of review that this Court should apply in reviewing IRS administrative determinations in consolidated CDP cases. Instead, our caselaw sets forth the appropriate standards. Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 609–10 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). When the taxpayer's underlying liability is not properly before us, we review the IRS's determinations for abuse of discretion. *Goza*, 114 T.C. at 182. Abuse of

**[\*8]** discretion exists when determinations are "arbitrary, capricious, or without sound basis in fact or law." *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Because the Company failed to dispute the underlying liabilities during its initial CDP hearing, the underlying liabilities are not at issue. *See* § 6330(c)(2)(B); *Giamelli*, 129 T.C. at 113–14. Accordingly, we will review the Commissioner's administrative determinations for abuse of discretion. *See Pough v. Commissioner*, 135 T.C. 344, 351 (2010); *Goza*, 114 T.C. at 182.

II.    *Abuse of Discretion*

In determining whether the Appeals Office abused its discretion, we consider whether the settlement officer (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues the Company raised, and (3) weighed "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [Company] that any collection action be no more intrusive than necessary." § 6330(c)(3). Our review of the record establishes that the settlement officer satisfied all three requirements.

A.    *Verification Requirement*

First, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). Because the Company has not challenged verification, no issues with the settlement officer's review have been raised. *See* Rule 331(b)(4) (deeming conceded any issue not raised in the assignments of error). On the basis of our review of the record, this Court concludes that SO Megyesi verified that all applicable requirements were met and that there is no abuse of discretion regarding the verification requirement.

B.    *Issues Raised by the Company*

Second, at the supplemental CDP hearing, the Company sought acceptance of its amended OIC of $111,077 to resolve its unpaid tax liabilities. The Commissioner may compromise an outstanding tax liability on multiple grounds, including doubt as to liability, doubt as to collectibility, and effective tax administration. *See* § 7122(a); Treas. Reg. § 301.7122-1(b). The Company's OIC was based on doubt as to

**[\*9]** collectibility and its contention that it did not have sufficient assets and income to cover the full amounts of its unpaid tax liabilities. Doubt as to collectibility exists in a case where the taxpayers' assets and income are less than the full amount of the liability. Treas. Reg. § 301.7122-1(b)(2). "[A]n offer to compromise based on doubt as to collectibility will be accept[ed] only if the offer reflects the [RCP] of the case (i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies)." *Murphy*, 125 T.C. at 309. The Commissioner may reject an OIC when the taxpayers' RCP exceeds the amount it proposes to pay. *See Johnson v. Commissioner*, 136 T.C. 475, 486 (2011), *aff'd*, 502 F. App'x 1 (D.C. Cir. 2013).

The Commissioner has wide discretion to accept compromise offers and to prescribe guidelines "to determine whether an offer-in-compromise is adequate and should be accepted." § 7122(d)(1). In reviewing the SO's determination, we do not decide for ourselves what would be an acceptable collection alternative. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013); *Murphy*, 125 T.C. at 320; *Randall v. Commissioner*, T.C. Memo. 2018-123, at \*9 ("We . . . do not recalculate a different amount for an acceptable installment agreement or OIC."). Our review instead is limited to determining whether the settlement officer abused his discretion—that is, whether his decision to reject the Company's OICs was arbitrary, capricious, or without sound basis in fact or law. *See Thompson*, 140 T.C. at 179; *Murphy*, 125 T.C. at 320.[3]

Generally, an Appeals officer is directed to reject any offer substantially below the taxpayers' RCP, unless special circumstances justify acceptance of such an offer. *See Mack v. Commissioner*, T.C. Memo. 2018-54, at \*10 (first citing Rev. Proc. 2003-71, § 4.02(2), 2003-2 C.B. 517, 517; and then citing *Johnson*, 136 T.C. at 485–86); *see also* Internal Revenue Manual (IRM) 5.8.4.3 (September 24, 2020). A settlement officer does not abuse his discretion when he adheres to published IRM collection guidelines. *See Eichler v. Commissioner*, 143 T.C. 30, 39 (2014); *Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005).

---

[3] We have jurisdiction to review an SO's rejection of an OIC that encompasses liabilities for both CDP years and non-CDP years. *See, e.g.*, *Sullivan v. Commissioner*, T.C. Memo. 2009-4, 2009 WL 20979, at \*8–9.

**[*10]** For SO Megyesi to conclude that the Company's OIC should be rejected, he needed only to find that its RCP exceeded $111,077 (i.e., the amount the Company proposed to pay as its OIC). SO Megyesi's determination that the Company's RCP was $2,312,037 was based on a significant increase in the Company's profits during 2024 and the amount of equity in its assets. SO Megyesi made that determination using the documents submitted by the Company. SO Megyesi's rejection of the Company's OIC was thoroughly explained, included his calculations of the Company's RCP, and adhered to the IRM guidelines. The Company was afforded an opportunity to submit additional documentation demonstrating a reduced RCP, but it failed to do so. It is not an abuse of discretion to reject an OIC based on doubt as to collectibility when taxpayers fail to submit the financial information necessary to fully evaluate its ability to pay its tax liabilities. *See Tucker v. Commissioner*, T.C. Memo. 2014-103, at *27. Accordingly, we will not substitute our judgment for that of SO Megyesi. Therefore, we conclude that SO Megyesi's decision to reject the Company's OIC was not arbitrary, capricious, or without sound basis in fact or law.

Although the Company indicated on its CDP Hearing Request Form that it was interested in pursuing an installment agreement, it did not propose any collection alternatives other than an OIC. "There can be no abuse of discretion for failure to consider an installment agreement that was never proposed." *Gentile v. Commissioner*, T.C. Memo. 2013-175, at *9, *aff'd*, 592 F. App'x 824 (11th Cir. 2014). Considering the foregoing, we hold that SO Megyesi did not abuse his discretion in rejecting the Company's OIC and determining that the Company was ineligible for any other collection alternatives.

C. *Balancing Obligations*

Third, SO Megyesi expressly concluded in the Supplemental Notices of Determination that sustaining the proposed collection actions balanced the need for efficient tax collection with the Company's legitimate concerns about intrusiveness given the absence of collection alternatives. *See* §§ 6320(c), 6330(c)(3)(C). Because the Company did not challenge SO Megyesi's conclusions, it has conceded this issue. *See* Rules 331(b)(4), 121(d); *see also CreditGuard of Am., Inc. v. Commissioner*, 149 T.C. 370, 379 (2017). Furthermore, on our review of the records, we find no basis for disturbing SO Megyesi's conclusions regarding this requirement.

**[*11]** III.  *Conclusion*

Accordingly, there are no disputes of material fact, and judgment may be rendered as a matter of law. Finding no abuse of discretion, this Court will grant the Motions and sustain the Appeals Office's determinations to sustain the collection actions relating to the First and Second Levy Notices and the NFTL filing.

We have considered all arguments made by the parties and, to the extent they are not addressed herein, deem them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Appropriate decisions will be entered.*